inate him; and whether the answers he might make to questions thereafter put to him would have that effect is a question not now before the court, and which we cannot now determine. All we determine is that he was bound to comply with the order of the court, and in refusing to do so was guilty of contempt, and should have been punished therefor. It is a novel, if not somewhat startling, proposition that an officer of a corporation can refuse to produce its books, when he is asked to account for property which has been committed to his charge, upon the ground that the production of the books may tend to incriminate him. If such rule were to prevail, it is not difficult to see how a person who had once obtained possession of the books of a public or private corporation might evade accounting for property which had come into his possession by doing what this witness did, viz., claiming that the production of such books would incriminate him, even though the production was solely for the purpose of enabling him to refresh his recollection concerning questions asked of him. But there is no such rule. Respondent was guilty of a deliberate contempt of court, and, if the court is to enforce its own orders, he should have been punished accordingly.

The order appealed from is reversed with $10 costs and disbursements, the motion to punish for contempt granted, and the matter remitted to the Special Term to determine the punishment to be inflicted. All concur.

---

### UNION NAT. BANK OF LEWISBURG, PA., v. LEARY.

(Supreme Court, Appellate Division, First Department. June 10, 1904.)

1. SUBSEQUENT APPEALS—FORMER DECISION—LAW OF THE CASE.

The unreversed decision of the Appellate Division, that an agreement to forbear enforcing notes was supported by a sufficient consideration, is the law of the case on a subsequent appeal on the same evidence, together with proof that a receiver for the maker of the notes had been appointed prior to the agreement, and that an injunction which restrained all persons within the state from proceeding to collect claims against the maker was then in force, as such injunction could not operate against plaintiff, a national bank doing business in a foreign state.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by the Union National Bank of Lewisburg, Pa., against Mary C. Leary, as administratrix, substituted, etc., for defendant James D. Leary, deceased. From a judgment for plaintiff, defendant appeals. Affirmed.

See 79 N. Y. Supp. 217.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Alfred A. Cook, for appellant.

Clifford W. Hartridge, for respondent.

HATCH, J. When this case was before us upon the former appeal (77 App. Div. 332, 79 N. Y. Supp. 217) we held that under the statute of

frauds a consideration supporting the contract of guaranty was required to be expressed in the instrument, or be fairly inferable therefrom; that, in arriving at a correct construction of the contract, all of the facts and circumstances attendant upon its delivery, the reasons therefor, and the purpose sought to be accomplished could be shown. And, applying such rule to the facts as they then appeared, we reached the conclusion that the instrument of guaranty fairly gave rise to the inference that the consideration for its execution was the agreement to forbear the enforcement of the notes, the subject of the guaranty, for a reasonable time, and that such agreement furnished a good consideration for the instrument sued upon. Upon this ground we reversed the judgment and ordered a new trial. The case as presented upon the new trial which has been had does not differ in any substantial respect from the case as made upon the formei appeal. While the facts and circumstances have been developed with more elaboration, yet in all essential features the case remains the same. The additional testimony given by the defendant does not add in the slightest degree to the force and effect of the averments contained in the answer of the defendant, and which we considered as having been established upon the former appeal. The additional testimony is a mere reiteration of these facts, and, as they were held insufficient to relieve from liability under the guaranty upon the former appeal (79 N. Y. Supp. 217), so, likewise, they must now be held ineffectual for such purpose.

Only one additional consideration is involved in the disposition of this appeal. It now appears that upon the 15th day of July, 1897, a receiver of the John Good Cordage & Machine Company was appointed, and in the order appointing such receiver was contained an injunction clause restraining all persons within the state of New York from making claims against it, or from commencing, continuing, or carrying on any suits or proceedings, or issuing any execution, process, or proceeding, upon any judgment or order now obtained, or that may hereafter be obtained, against the corporation, or from levying upon, seizing, selling, advertising, or taking any steps to levy upon, seize, sell, or advertise any of its property. The contract of guaranty bore date October 16, 1897, so that the injunction was in full force and operation within the state of New York at the time when the contract of guaranty was executed. The plaintiff, however, is a corporation, organized and existing, by virtue of the Laws of the United States, as a national banking corporation, and doing business as such in the city of Lewisburg, in the state of Pennsylvania. Manifestly, the injunction order did not operate to restrain the plaintiff from instituting proceedings and prosecuting actions to judgment against the corporation, or from levying upon, seizing, and selling any of the property of the corporation which it might reach outside of the limits of the state of New York. It does not appear, so far as I am able to discover in this record, whether the John Good Cordage & Machine Company was a foreign or domestic corporation. It does appear, however, that a proceeding was instituted for the appointment of a receiver in the state of New Jersey. It is fairly to be inferred therefrom either that the corporation was organized under the laws of

that state, or that it had property within its jurisdiction which it was sought to embrace within a receivership; but, however this may be, there is nothing whatever to show but that the plaintiff could have instituted an action and enforced any judgment which it might have obtained within the jurisdiction where it carried on its business, and therein the injunction granted in this state could not and did not operate. It seems, therefore, to stand admitted now, as upon the former appeal, that the contract of guaranty was delivered for the purpose of procuring an extension and forbearance in the enforcement of the notes for a reasonable time, in consequence of which the decision delivered upon the former appeal is of controlling force and decisive of all the questions now presented. Until this decision shall be reversed by superior authority, it must be regarded as controlling in disposition of the questions presented by this appeal.

It follows, therefore, that the direction of a verdict by the learned court below was correct, and the judgment based thereon should be affirmed, with costs.

O'BRIEN and LAUGHLIN, JJ., concur.   VAN BRUNT, P. J., concurs in result.

INGRAHAM, J. (dissenting). This court decided, upon a former appeal in this action (77 App. Div. 332, 79 N. Y. Supp. 217), that the letter signed by the defendant's intestate, addressed to the president of the plaintiff, was not within the statute of frauds, and expressed a valid consideration, and that there was sufficient to justify an inference that, relying on the execution and delivery of the letter, the plaintiff forbore the enforcement of the note in suit, which would be a sufficient consideration for the promises contained in the letter. That conclusion was upon the facts as they appeared upon the first trial, where the defendant was not called on, as the complaint was dismissed.

The question now presented is whether upon all the evidence there was any consideration for the promise of the defendant's intestate. Upon the new trial there was evidence to show that on October 16, 1897, the plaintiff held two notes of a corporation known as the John Good Cordage & Machine Company, indorsed by John Good, one dated March 6, 1897, payable on demand, for $4,500, and one, dated April 15, 1897, payable on demand, for $2,500, with which the defendant had no connection and upon which he was not liable; that prior to this time payment of these notes had been duly demanded; that the maker of the notes had failed to pay its current obligations, and there were proceedings pending for a reorganization of the corporation, and a committee was appointed for that purpose, the defendant's intestate being one of that committee; that on the 15th day of July, 1897, in an action commenced in the Supreme Court of the state of New York, a receiver of the corporation, the maker of the notes, was appointed, and in the order appointing the receiver the corporation was enjoined from paying out, disposing of, or in any way transferring or delivering to any person any of the money, property, or effects of said John Good Cordage & Machine Company;

and that all of the creditors of the said John Good Cordage & Machine Company, and any and all other persons making claims against it, and the sheriff of any county in the state of New York, were enjoined and restrained from commencing continuing, or carrying on any suits or proceedings against said corporation, or issuing any execution, pro-. cess, or proceeding upon any judgment or order then obtained or which might thereafter be obtained against said corporation. The plaintiff, therefore, being the owner of these notes, and being restrained by this order from commencing any proceeding of any kind against the corporation, the maker of the notes, the president of the plaintiff called upon the defendant's intestate at his house in the city of New York. The plaintiff's president asked the defendant's intestate what prospect there was of collecting these notes of the John Good Company, in reply to which the defendant's intestate said that he thought they would be good for collection in a short time, as the company was trying to reorganize, with every prospect of success, and that it was proposed to issue bonds to the creditors of the corporation upon such reorganization. That the plaintiff's president then stated that he had been criticised for making the loan upon these notes, and did not like to state to the directors that they would have to accept bonds for them. That the plaintiff's president then appealed to the defendant's intestate to pay one-half of the notes on account of their long friendship, which appeal did not meet with a ready response. That the plaintiff's president then said that he would pay one half of the notes and take bonds for the half he paid, and asked the defendant's intestate to pay the other half and take bonds. To this defendant's intestate finally agreed. That the plaintiff's president then wrote a letter to carry out this agreement, so that he could show it to the directors of the plaintiff, and, when it was suggested by the defendant's intestate that the form of the letter should be changed, the plaintiff's president said: "I don't want to do that; I don't want to show that part to the bank; we will understand that. I am the president of the bank." Whereupon this letter was signed by the defendant's intestate. Prior to this time a notice of an application for the appointment of a receiver of the John Good Company in the state of New Jersey had been mailed to the plaintiff, and a notice had also been mailed to the plaintiff that a receiver of the property of the corporation had been appointed by the Supreme Court of the state of New York. No proceedings had been taken by the bank to enforce the note prior to the appointment of this receiver in July, 1897, although the notes had been due from March 6, 1897, and no proceeding was subsequently taken, and there is no evidence that any proceedings could have been taken against this corporation to recover upon these notes, after the letter was written by the defendant's intestate, which could have resulted in any benefit to the plaintiff, or that the notes then were, or at any subsequent time ever were, of any value, or that the plaintiff lost anything by a failure to proceed against the the maker or indorser of the note. At the end of all the testimony the defendant moved to dismiss the complaint, which motion was denied, and the defendant excepted. The plaintiff then asked the court to direct a verdict for the plaintiff for the amount of the

note. The defendant asked to go to the jury, which was denied, to which the defendant excepted, and the court then directed a verdict for the plaintiff.

I think it was error to direct a verdict for the plaintiff. If the inference that the plaintiff failed to proceed against the maker and indorser of the note, relying upon the defendant's intestate's promise contained in this letter, could be drawn from the undisputed evidence produced by the plaintiff, that presumption, it seems to me, was entirely overcome by the evidence offered by the defendant. Prior to July, 1897, the plaintiff had taken no steps to enforce the notes; although they were long overdue, and the maker of the notes had failed. A receiver of the corporation, the maker of the notes, was then appointed, and all creditors were enjoined from prosecuting any claim against the corporation, and an application had been made for the appointment of a receiver in the state of New Jersey. It is quite evident from the testimony that any proceedings taken after July would have been entirely unavailing. In that situation the president of the plaintiff applied to the defendant's intestate to make some arrangement by which he would be relieved from criticism by the directors of the bank for making the loan, and a verbal agreement was arrived at by which the defendant's intestate would pay half the note, the president of the bank to pay the other half, and to relieve the president from criticism the letter in question was written. If these facts are true, it is quite evident that there was no consideration for this agreement. There is no consideration expressed in the agreement itself. There was no suggestion made, at the interview at which this letter was written, that in consideration of the promise the plaintiff would delay in enforcing the note, or that the letter was written for that purpose; but it affirmatively appears that the letter was written at the request of the plaintiff's president and to save him from criticism, and no action was taken by the plaintiff relying on that letter. This being the object of writing the letter, and it appearing that there was no promise, express or implied, that the plaintiff would not proceed to collect the notes, there is certainly no basis for holding that a forbearance was a consideration, and yet the only consideration suggested is this forbearance by the plaintiff. To spell out a consideration for this agreement, it is necessary to infer that the letter was written to secure a forebearance, and that in consequence of some verbal agreement, express or implied, when the letter was written, the plaintiff did forbear the prosecution of the notes. There was no such agreement proved. It was held upon the former appeal that one could be implied from the facts as they appeared upon the first trial. Upon this trial we have express evidence of the circumstances attending the execution of this letter, and that evidence negatives any agreement, express or implied, not to prosecute the note or to forbear in any way enforcing the claim of the plaintiff, but the evidence shows that the letter was written at the request of the plaintiff's president to relieve him from criticism for making the loan upon these notes; that the enforcement of this obligation would have been impossible in view of the condition of the corporation, the maker, and that any proceeding against the corporation was enjoined by an order of the

Supreme Court. There is not the slightest suggestion in the record that the indorser was financially responsible, that the defendant had any interest in the indorser, or that his responsibility was discussed or considered by the parties at the time of the writing of this letter. It seems to me, from this undisputed evidence, that any inference as to a consideration for this agreement to guaranty these notes was rebutted, and that the defendant was entitled to the direction of a verdict, or that, in any event, the question as to whether there was a consideration should have been submitted to the jury.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.